UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LOGAN BOURQUE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 24-cv-11831-ADB |
| | * | |
| ROLLINS, INC. and WALTHAM SERVICES, LLC, | * | |
| | * | |
| Defendants. | * | |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

Logan Bourque ("Plaintiff" or "Bourque") brings this action against Defendants Rollins, Inc. ("Rollins") and Waltham Services, LLC ("Waltham" and together with Rollins, "Defendants"), related to Defendants' alleged (1) failure to pay wages in the manner required under Massachusetts law and (2) retaliation under the Fair Labor Standards Act ("FLSA"). [ECF No. 1 ("Complaint" or "Compl.")]. Presently before the Court is Defendants' motion to compel arbitration of Plaintiff's claims and to stay this action pursuant to the Federal Arbitration Act ("FAA") and the terms of Bourque's employment agreement. [ECF No. 7 ("Motion" or "Mot.")]. For the reasons set forth below, the motion is **GRANTED**, and this case is **STAYED** pending the completion of arbitration.

1

I.      BACKGROUND

The Court draws the following facts from the Complaint and documents submitted in support of the motion to compel arbitration, see Cullinane v. Uber Techs., Inc., 893 F.3d 53, 55 (1st Cir. 2018) (citation omitted), "construe[s] the record in the light most favorable to the non-moving party[,] and draw[s] all reasonable inferences in its favor," Air-Con, Inc. v. Daikin Applied Latin Am., LLC, 21 F.4th 168, 175 (1st Cir. 2021).

A.      Factual Background

As part of its application and hiring process, Waltham creates online, password-protected candidate profiles. [ECF No. 8-1 ¶ 4]. Hiring managers review candidates' online profiles, evaluate the candidates, and conduct interviews. [Id. ¶ 5]. When the hiring manager decides to hire a particular candidate, the hiring manager sends the selected candidate's online profile to an "onboarding platform known as MyRollins (UKG Pro)." [Id. ¶ 6]. Through MyRollins (UKG Pro), the candidate receives initial onboarding documents to review and electronically sign, "which include tax forms, benefits information, policy acknowledgements, restrictive covenants, and an Agreement to Arbitrate." [Id. ¶ 7].

The Agreement to Arbitrate (the "Agreement"), aptly titled "**AGREEMENT TO ARBITRATE**," [ECF No. 8-1 at 24], provides, in relevant part:

> [I]n consideration of employment and the mutual promises, covenants, and conditions set forth in this Agreement, I agree, as does the Company, to abide by the Company's Dispute Resolution Policy ("DRP") and to arbitrate any dispute, claim, or controversy regarding or arising out of my employment (as defined by the Company's DRP, a copy of which I may request at any time) that may arise between me and the Company, its parent, subsidiaries, affiliates or any other persons or entities acting as its agent. The parties agree that the Company's operations directly affect interstate commerce to the extent that all procedures hereunder contemplated shall be subject to, and governed by, the Federal Arbitration Act (FAA). Unless the parties agree otherwise, the arbitration shall be administered under the applicable rules of the American Arbitration Association ("AAA"). The parties agree that the arbitrator shall follow the substantive law, including the terms and conditions of this Agreement.

[Id.].

Waltham offered Plaintiff a position as Account Executive on February 24, 2022. [ECF No. 8-1 ¶ 9]. On March 8, 2022, Plaintiff electronically signed a series of onboarding documents, [id. at 6–22], including a copy of the Agreement to Arbitrate, [id. at 24]. Plaintiff does not remember signing the Agreement. [ECF No. 9-1 ¶ 4]. He never received a copy of the Dispute Resolution Policy (or, "DRP") referenced in the Agreement. [Id. ¶ 5]; see also [ECF No. 8-1 at 26–37].

Plaintiff worked for Waltham from March 2022 until he was terminated in May 2023. [Compl. ¶¶ 15, 24].

### B. Procedural Background

Plaintiff filed the operative complaint in this action on July 17, 2024. [Compl.]. On September 30, 2024, Defendants moved to compel arbitration of Plaintiff's claims and stay the proceedings pending the outcome of such arbitration, [Mot.], which Plaintiff opposed on October

11, 2024, [ECF No. 9 ("Opp.")]. Defendants replied on November 1, 2024. [ECF No. 13 ("Reply")].

## II.     LEGAL STANDARD

This Court's review of Defendants' motion is governed by the FAA, 9 U.S.C. §§ 1–16, which "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts," Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir. 2011) (quoting Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006)). The FAA provides that a "written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[T]he FAA does not compel arbitration unless the Court is satisfied that there exists a valid agreement to arbitrate." Emmanuel v. Handy Techs., Inc., 442 F. Supp. 3d 385, 391 (D. Mass. 2020) (citing Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ., 489 U.S. 468, 478 (1989)), aff'd, 992 F.3d 1 (1st Cir. 2021); see also Morgan v. Sundance, Inc., 596 U.S. 411, 418 (2022). "Consequently, arbitration clauses are subject to 'generally applicable contract defenses' available under state law." Handy Techs, 442 F. Supp. 3d at 391 (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339–40 (2011)).

The party seeking to compel arbitration bears the burden of proving "that a valid agreement to arbitrate exists, the movant has the right to enforce it, the other party is bound by it, and that the claim asserted falls within the scope of the arbitration agreement." Oyola v. Midland Funding, LLC, 295 F. Supp. 3d 14, 16–17 (D. Mass. 2018) (citing Bekele v. Lyft, Inc., 199 F. Supp. 3d 284, 293 (D. Mass. 2016)). "[I]f the party moving to compel arbitration meets its initial burden of production, the non-moving party must offer evidence supporting its own case," Crean

4

v. Morgan Stanley Smith Barney, LLC, 652 F. Supp. 3d 171, 175 (D. Mass. 2023) (quoting Casale v. Ecolab Inc., No. 21-cv-00126, 2022 WL 1910126, at *4 (D. Me. June 3, 2022)), but "[t]he non-moving party 'cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial,'" Air-Con, 21 F.4th at 175 n.8 (quoting Soto v. State Indus. Prods., 642 F.3d 67, 72 n.2 (1st Cir. 2011)).

In evaluating motions to compel arbitration under the FAA, "district courts . . . apply the summary judgment standard." Air-Con, 21 F.4th at 175. Under this standard, "[i]f the non-moving party puts forward materials that create a genuine issue of fact about a dispute's arbitrability, the district court 'shall proceed summarily' to trial to resolve that question." Id. (first quoting 9 U.S.C. § 4; and then citing Neb. Mach. Co., Inc. v. Cargotec Sols., LLC, 762 F.3d 737, 744 (8th Cir. 2014)). In conducting this review, the Court "construe[s] the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in its favor." Id.

### III.   DISCUSSION

Plaintiff argues that Defendants' motion to compel arbitration should be denied because (1) there was no valid agreement to arbitrate, see [Opp. at 5–14], and (2) the Agreement, if it exists, is unconscionable, see [id. at 14–16].

#### a. Whether the Parties Formed a Valid Agreement to Arbitrate

Plaintiff argues that the Agreement is invalid because (1) Defendants have failed to provide sufficient evidence that the signature on the Agreement is his, [Opp. at 6–10], (2) Defendants failed to reasonably communicate the terms of the Agreement, [id. at 10–12] and, 3) "there [was] no consideration supporting the arbitration [agreement]," [id. at 12–14].

5

### i. Massachusetts Law Applies

The Court, with the apparent agreement of both parties, will apply Massachusetts law to determine whether a valid agreement to arbitrate exists. See [ECF No. 8 at 7; Opp. at 6]; see also Crean, 652 F. Supp. 3d at 179 ("[I]n 'deciding whether the parties agreed to arbitrate a certain matter [under the FAA] . . . courts . . . should apply ordinary state-law principles that govern the formation of contracts.'" (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995))). "The essential elements for the formation of a contract under Massachusetts law consist of an offer, acceptance, and consideration." Doe v. Trs. of Bos. Coll., 892 F.3d 67, 89 (1st Cir. 2018) (citing Quinn v. State Ethics Comm'n, 516 N.E.2d 124, 127 (Mass. 1987)).

### ii. Signature

Defendants contend that Plaintiff plainly agreed to arbitrate the present dispute when he completed his onboarding documents and electronically signed the Agreement on March 8, 2022. [ECF No. 8 at 3]. Plaintiff counters that "there is not a valid agreement to arbitrate because there is no evidence that the signature on the Agreement is attributable"[1] to Plaintiff. [Opp. at 8].

---

[1] Plaintiff contends that the Massachusetts Uniform Electronic Transactions Act, Mass. Gen. Laws ch. 110G, applies to this action. [Opp. at 6]. This act provides, in relevant part, that an "electronic signature is attributable to a person if it was the act of the person," and that "[t]he act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electric signature was attributable." Mass. Gen. Laws ch. 110G § 9(a). Plaintiff contends that Defendants have failed to show that his signature is "attributable" to him because Defendants have failed to sufficiently detail their security procedures for onboarding documents. [Opp. at 9]. Plaintiff provides no authority, however, to support the contention that the Massachusetts Uniform Electronic Transactions Act applies here; in fact, he admits that no Massachusetts court has assessed the circumstances under which "an electronic signature on an arbitration agreement is 'attributable' to a plaintiff." [Id. at 7]. Assuming without deciding that the Massachusetts Uniform Electronic Transactions Act would apply, the statute is quite clear that the "act of the person may be shown in any manner," Mass. Gen. Laws ch. 110G § 9(a), and the Court, for the reasons articulated infra, finds that, for purposes of this motion, Defendants have adequately shown that the signature is attributable to Plaintiff.

Plaintiff provides almost no evidence, however, to create a genuine dispute of fact as to whether his signature is authentic, offering only his declaration that he "does not remember signing an arbitration agreement." [ECF No. 9-1 ¶ 4]. A mere "lack of memory . . . is hardly affirmative evidence of non-receipt," Haag v. United States, 485 F.3d 1, 3 (1st Cir. 2007), particularly where Defendants have provided evidence (albeit limited) that their online candidate program is secured by a password, [ECF No. 8-1 ¶ 4], as well as metadata indicating that the Agreement was executed moments before and after other onboarding documents, see [Reply at 16]. Further, Plaintiff concedes that he remembers completing the other onboarding documents, [ECF No. 9-1 ¶ 2 ("I remember having to complete many documents as a part of the Defendants' hiring process through an online portal.")], see also [id. ¶ 3 ("The software had me type my initials and name initially, and then I simply clicked through each document.")]. Absent any evidence from Plaintiff that he did not, in fact, sign the document, the Court finds no genuine dispute of fact as to whether he signed the Agreement.[2]

---

[2] Much of Plaintiff's cited authority (all applying law other than Massachusetts) also supports the conclusion that Plaintiff's signature is authentic. For example, Plaintiff relies on Bracamontes v. United Rentals, Inc., in which the court found that Plaintiff's signature was authentic, despite her allegation that it was forged, where she presented "no evidence to support this claim," noting that "it is not sufficient for the party opposing arbitration to utter general denials of the facts on which the right to arbitration depends . . . . [T]he party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." No. 23-cv-02697, 2024 WL 1884052, at *4 (E.D. Cal. Apr. 30, 2024) (quoting Grabowski v. Robinson, 817 F. Supp. 2d 1159, 1168 (S.D. Cal. 2011)). Similarly, Plaintiff cites to Iyere v. Wise Auto Group, where the court, in finding a valid arbitration agreement despite the plaintiffs' claims that they did not recall signing the agreement, explained "there is no conflict between their having signed a document . . . and, two years later, being unable to recall doing so. In the absence of any evidence that their purported signatures were not their own, there was no evidence that plaintiffs did not in fact sign the agreement." 303 Cal. Rptr. 3d 835, 843 (Cal. Ct. App. 2023). While the signature in Iyere was handwritten, rather than electronic, the reasoning stands – Plaintiff's lack of recollection does not establish that the signature is not his in the absence of any other supporting evidence.

### iii. Reasonable Notice

Plaintiff additionally contends that the Agreement is invalid because he was not given reasonable notice of its terms. [Opp. at 10–12]. He argues that because "the Agreement sets forth that in signing the agreement the signor is agreeing 'to abide by the Company's Dispute Resolution Policy ("DRP"),'" [id. at 10 (quoting ECF No. 8-1 at 24)], which he did not receive or have an opportunity to review when he signed the Agreement, [ECF No. 9-1 ¶ 5], Plaintiff did not have actual or reasonable notice of the Agreement's terms, [Opp. at 11].

Plaintiff's argument is ultimately unavailing. "Given the 'traditional rule' in Massachusetts 'that one is assumed to have read and understood the terms of a contract he signs,' an employee need not 'actually kn[o]w' about an arbitration agreement's provisions so long as adequate notice is provided." Hayes v. Conduent Com. Sols., LLC, No. 21-cv-11545-DJC, 2022 WL 1104622, at *4 (D. Mass. Apr. 13, 2022) (alteration in original) (quoting Gonzalez v. GE Grp. Adm'rs, Inc., 321 F. Supp. 2d 165, 169 (D. Mass. 2004)). The burden to show such reasonable notice is a low one: Defendants need only provide "some minimal level of notice to the employee that the statutory claims are subject to arbitration." Ellerbee v. GameStop, Inc., 604 F. Supp. 2d 349, 354 (D. Mass. 2009) (quoting Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 554 (1st Cir. 2005)). "This is an objective test: 'the sufficiency of the notice turns on whether, under the totality of the circumstances, the employer's communication would have provided a reasonably prudent employee notice of the waiver [of the right to proceed in a judicial forum].'" Id. (quoting Campbell, 407 F.3d at 555). Even assuming Plaintiff did not receive a copy of the DRP, the Agreement itself provided sufficient notice of its terms. It states, in clear language, under the bolded heading **AGREEMENT TO ARBITRATE**, that Plaintiff and the Company were agreeing to arbitrate "any dispute, claim, or controversy regarding or

arising out of [Plaintiff's] employment (as defined by the Company's DRP, a copy of which [Plaintiff] may request at any time)." [ECF No. 8-1 at 24]. The Agreement thus made clear that 1) Plaintiff was agreeing to arbitrate claims, 2) that those claims were related to his employment, and 3) that he could request a copy of the DRP to learn more at any time.[3] This is sufficient to put a reasonable person on notice that their employment-related claims would be subject to arbitration. Awuah v. Coverall North Am., Inc., 703 F.3d 36, 42–43 (1st Cir. 2012) (noting that Massachusetts law allowed the incorporation by reference of an arbitration clause under similar circumstances).

   iv. **Consideration**

  Plaintiff's final argument regarding the Agreement's validity is that it lacks consideration. [Opp. at 12–14]. Specifically, Plaintiff argues that because the final paragraph of the Agreement states that "this agreement to arbitrate is not a contract of employment and does not alter [Plaintiff's] status as an employee at-will . . . and is a free-standing contract" it needed its own, independent consideration beyond Plaintiff's employment. [Opp. at 13 (citing ECF No. 8-1 at 24)]. The Agreement makes clear, however, that the parties agreed to arbitrate "in consideration of employment and the mutual promises, covenants, and conditions set forth in this

---

[3] Additionally, it is worth noting that the DRP largely provides procedures for arbitration, such as time limits for filing a demand for arbitration, voluntary pre-arbitration mediation, and selection of an arbitrator. See generally [ECF No. 8-1 at 26–37]. It does not provide substantially more information about the types of disputes Plaintiff was agreeing to arbitrate, defining "dispute" to mean "(1) all claims, actions or suits arising out of or in connection with any applicant's application for employment and the Company's actions with respect to that application, and (2) all claims, actions or suits arising out of or in connection with any employee's employment, including but not limited to the terms and conditions of any employee's employment and the termination or cessation of that employment." [Id. at 27]. A reasonable person would have had sufficient notice that these claims were included in the Agreement based on the language of the Agreement, namely that it encompassed "any dispute, claim, or controversy regarding or arising out of [Plaintiff's] employment." [ECF No. 8-1 at 24].

9

Agreement," [ECF No. 8-1 at 24], both of which are well-established as adequate consideration for a promise to arbitrate. See Pond v. Harris, 113 Mass. 114, 118 (1873) ("The law is now settled that the mutual promises of the parties in an agreement for arbitration are sufficient consideration each for the other."); Horner v. Bos. Edison Co., 695 N.E.2d 1093, 1096 (Mass. App. Ct. 1998) (holding release of claims signed as part of employment application was supported by valid consideration where the application stated the release was made "in consideration of any offer of employment" and there was "no question [plaintiff] became employed . . . after he filled out the employment application"); Miller v. Cotter, 863 N.E.2d 537, 547 n.16 (Mass. 2007) ("Each party waived its right to judicial process and gained the right to invoke arbitration. This reciprocal exchange of benefit and detriment constitutes consideration."). As such, the Agreement is supported by adequate consideration.

### b. Whether the Agreement is Unconscionable

Finally, Plaintiff argues that, if the Agreement is valid, it should not be enforced because it is unconscionable. [Opp. at 14–17]. In support, Plaintiff argues that 1) Defendants have carved out the right to pursue violations of restrictive covenants in court, 2) the Agreement contains a fee-splitting arrangement for disputes not involving statutory civil rights, and 3) it was a contract of adhesion as Plaintiff was required to sign the Agreement to be hired, despite not being represented by counsel. [Id.].

Pursuant to the Agreement, these issues are not within this Court's purview and are instead left to the arbitrator. The Agreement states that "the arbitration shall be administered under the applicable rules of the American Arbitration Association ("AAA")," and the First Circuit has been "clear that incorporation of the AAA arbitration rules constitutes clear and unmistakable evidence of the parties' intent to delegate arbitrability issues to the arbitrator. Toth

v. Everly Well, Inc., 118 F.4th 403, 414 (1st Cir. 2024) (citing Bosse v. N.Y. Life Ins. Co., 992 F.3d 20, 29 (1st Cir. 2021)). Such "arbitrability issues" include "objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Id. at 414 (quoting Com. Arb. Rules & Mediation Procs. R-7(a) (2013)). The unconscionability of the Agreement goes to its validity, id. at 415–16,[4] and, as such, the Court will not address it.

## IV.     CONCLUSION

For the reasons set forth above, Defendants' motion to compel arbitration and stay the case is **GRANTED**. Plaintiff's claims against Defendants must, in the first instance, be arbitrated, and this case is **STAYED** pending the completion of that arbitration.

    SO ORDERED.

January 31, 2025                                    /s/ Allison D. Burroughs
                                                    ALLISON D. BURROUGHS
                                                    U.S. DISTRICT JUDGE

---

[4] The Court could, within its authority, determine whether the clause delegating such enforceability challenges to the arbitrator is unconscionable or otherwise unenforceable. Toth, 118 F.4th at 414 ("A court can [] consider validity challenges such as [Plaintiff's] only insofar as they apply to the delegation provision -- the provision incorporating the AAA arbitration rules."). Plaintiff, however, does not raise any challenges to the delegation provision. See generally [Opp.]. Given that Plaintiff does not challenge the delegation clause, the Court does not address it here. Toth, 118 F.4th at 416 (leaving unconscionability challenges to arbitrator where Plaintiff identified "many allegedly one-sided provisions" in the arbitration agreement but none of those issues made "the delegation provision itself unfair or somehow restrict[ed Plaintiff's] ability to challenge the validity of the arbitration agreement before an arbitrator" (citing Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 66 (2010))).